UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION


KIMBERLY GABBARD and          )
MICHAEL GABBARD,              )
        Plaintiffs,           )
                              )
    vs.                       )          1:09-cv-0405-SEB-DML
                              )
MEIJER STORES LIMITED         )
PARTNERSHIP,                  )
        Defendant.            )


**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


This lawsuit was brought by Ms. Kimberly Gabbard and her husband, Mr. Michael

Gabbard, (together, "Plaintiffs") against Meijer Stores Limited Partnership on claims of

negligence and loss of consortium.  The case is now before the Court on Defendant Meijer's

Motion for Summary Judgment.  [Docket No. 42].  Because we agree with Defendant that

Plaintiffs have failed to create a genuine issue of material fact with regard to proving Ms.

Gabbard's injuries were proximately caused by Defendant's breach of duty, Defendant's

motion is <u>GRANTED</u>.[1]

## **BACKGROUND**

On March 12, 2007, Kimberly Gabbard went to the Meijer Store located at 11351 East

---

[1]Summary judgment is also warranted with regard to Mr. Gabbard's loss of consortium
claim, which is entirely derivative of Ms. Gabbard's negligence claim.  <u>Arthur v. Arthur</u>, 296
N.E.2d 912, 913 (Ind. Ct. App. 1973)("a cause of action for loss of consortium derives its
viability from the validity of the claim of the injured spouse against the wrongdoer.").

Washington Street, Indianapolis, Indiana to purchase groceries and sundry items. Compl. ¶ 6. Ms. Gabbard was a regular shopper at the Meijer Store. Pls.' Resp. ¶ 2. Upon leaving the store, the front wheel of a grocery cart Ms. Gabbard was pushing "became lodged in a rise in elevation from the end of the ramp to the adjacent parking lot." Compl. ¶ 6. According to Ms. Gabbard, the wheel turned sideways, lodged between the blacktop and the concrete at the end of the ramp ("the pavement gap"). Pls.' Resp. ¶ 4. Ms. Gabbard then collided into the back of the cart, hitting her shin and "wrenching" her back. Compl. ¶¶ 7-8.

On April 20, 2007, Ms. Gabbard consulted Dr. Kristi George, a medical doctor specializing in Adult and Child Neurology and Neuromuscular Diseases.[2] George Dep. at 4-6; 62-63. At that appointment and at several subsequent appointments, Ms. Gabbard complained that she felt pain in various parts of her body, including her back, legs, neck, and ribs. George Dep. at 11-12; 28; 39-41; 47-48; 50. The intensity of her pain in these areas would vary. See generally, May 22, 2008 Report of Dr. Kimberly George. [Docket No. 29-4]. An MRI report dated April 2, 2007 showed "bone marrow edema at L4 of the spine," a finding that Plaintiffs argue is consistent with trauma. Pls.' Resp. at 5. Another MRI taken in June 2007 showed "a disc protrusion at the C5-6 level to the right with mild cord deformity, foraminal compromise at C5-6 right and cord syrinx in the lower thoracic spine."

---

[2]In 1997, Ms. Gabbard had seen Dr. George for hip, low back, and leg pain resulting from a fall Ms. Gabbard endured in January of 1995. George Dep. at 6-11; 32-34; 80-81. The final treatment Ms. Gabbard received related to that fall was in the spring of 1998. Id. at 32-33. Following that treatment, Dr. George opined that Ms. Gabbard had ten percent whole body permanent partial impairment (an impairment unlikely to improve) due to piriformis syndrome, a condition preventing Ms. Gabbard from sitting or standing for prolonged periods of time. George Dep. at 9-11.

Id. at 11.  Plaintiffs assert that these radiographic findings clinically correlate with Ms. Gabbard's reported injuries.  Id.  However, each of Dr. George's sixteen physical examinations of Ms. Gabbard dating from April 20, 2007 through May 5, 2010 were "objectively normal," meaning that Dr. George could not see, feel or test for any injury beyond Ms. Gabbard's subjective complaints of pain.  George Dep. 12-13; 18-24; 26-32.

Dr. George treated Ms. Gabbard's symptoms with medication and physical therapy performed by Dr. Brian Foley of the Community Spine Center.  George Dep. at 48-54.  She also referred Ms. Gabbard to Dr. Lydia Ferrell for epidural steroid injections.  Id.  According to Ms. Gabbard and Dr. George, these treatments provided Ms. Gabbard with only temporary relief.  Id. at 60; Pls.' Resp. at 5-6.  Plaintiffs allege that, as a proximate result of Ms. Gabbard's injuries resulting from Meijer's negligence, she has suffered a significant and permanent loss of range of motion and strength in her spine and has incurred over $50,000 in medical expenses.  Compl. ¶¶ 12-13.

## LEGAL ANALYSIS

### I.    Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all

facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d

518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## II. Discussion

To prevail on her negligence claim, Ms. Gabbard must prove: (1) that Meijer owed a duty to Ms. Gabbard, (2) that Meijer breached that duty, and (3) that the breach was the proximate cause of the Ms. Gabbard's injuries. See Topp v. Leffers, 838 N.E.2d 1027, 1032 (Ind. App. 2005). The parties agree that, as a customer, Ms. Gabbard was an invitee onto the premises owned by Meijer and that, as such, Meijer did owe Ms. Gabbard the duty of reasonable care. Def.'s Mem. at 3; Pls.' Resp. at 8. Thus, it is only the latter two elements of Ms. Gabbard's negligence claim that are in dispute for purposes of Defendant's motion. Because, as explained below, we find that Ms. Gabbard has failed to create a genuine issue of material fact with regard to proximate causation, we decline to consider whether there is evidence that Meijer breached its duty to the Plaintiffs.

"An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered." Daub v. Daub, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994). "The element of causation requires that the harm would not have occurred but for the defendant's conduct." City of East Chicago v. Litera, 692 N.E.2d 898, 901 (Ind. Ct. App. 1998). "The 'but for' analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm." Daub, 629 N.E.2d at 877.

Where a medical injury is objective in nature, a plaintiff may testify to the injury and

that testimony may be sufficient for a jury to render a verdict absent medical testimony. Topp v. Leffers, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005) (citing Daub, 629 N.E.2d at 877). However, "[w]hen the issue of cause is not within the understanding of a lay person," such as where there is a preexisting affliction, the injury is subjective, or is otherwise complicated, "testimony of an expert witness on the issue is necessary." Daub, 629 N.E.2d at 878. "A subjective complaint or injury is perceived or experienced by a patient and reported to the patient's doctor but is not directly observable by the doctor." Topp, 838 N.E.2d at 1033. Such expert testimony regarding causation must also be reasonably certain. "Expert medical opinion couched in terms less than that of a reasonable degree of medical certainty; such as 'possible,' 'probable,' or 'reasonably certain,' are admissible and do have probative value. However, such medical testimony standing alone, unsupported by other evidence, is not sufficient to support a verdict . . . ." Topp, 838 N.E.2d at 1033-34 (quoting Colaw v. Nicholson, 450 N.E.2d 1023, 1030 (Ind. Ct. App. 1983)).

According to the Complaint, Ms. Gabbard struck her shin and "wrenched her back," allegedly resulting in "problems with her knee, cervical spine, right arm, ribs, thoracic spine and lumbar spine, as well as severe pain, numbness, and spasms secondary to her injury." Compl. ¶¶ 7, 8, 11. These injuries may very well have occurred but the issue of their cause is certainly not within the understanding of a lay person. Furthermore, Defendant correctly points out that the issue of causation is further complicated by Ms. Gabbard's previous injury, about which Dr. George testified as well. George Dep. at 9-11. Thus, we agree with Defendant that expert witness testimony establishing causation with reasonable certainty is

necessary for Ms. Gabbard to maintain her case.

Dr. George's May 22, 2008 Report concluded as follows:

> We have done extensive testing and not found any cause for [Ms. Gabbard's] symptoms.  We have not found anything specific to treat.  This flare-up of symptoms certainly started after the relatively minor episode at Meijer yet I cannot give a conclusive explanation as to how that could have caused all the symptoms described above.

May 22, 2008 Report of Dr. Kimberly George. [Docket No. 29-4].  Defendant argues Dr. George's opinion is "indefinite" and lacking reasonable certainty such that it cannot support a judgment in favor of Ms Gabbard.  Clearly, that is true.  Undoubtedly, Dr. George's conclusion in her May 22 Report on its face lacks reasonable certainty regarding causation.

Plaintiffs do not respond to Defendant's challenge as to the degree of certainty contained in the May 22 Report, but instead point to select portions of Dr. George's deposition testimony where she states that Ms. Gabbard's injuries were "more likely than not" caused by her March 12, 2007 accident, based on what Ms. Gabbard told her.  George Dep. at 19-20; 40-42; 47-50; 79-80.[3]  Dr. George explained the apparent inconsistency between her conclusion in her May 22 Report and her deposition testimony as follows:

---

[3]Defendant previously requested that we disregard any portions of Dr. George's testimony that conflict with her May 22 Report.  [Docket No. 33].  This request was apparently in response to an additional letter from Dr. George, which Defendant's counsel did not receive until June 14, 2010, 11 days after the June 3, 2010 deadline the parties had agreed upon for pre-trial disclosures. [Docket No. 16].  Because we find that Dr. George's deposition testimony does not establish causation with any reasonable certainty, we need not consider whether it should have been stricken.  Thus, Defendant's Motion to Strike Dr. Kristi George's June 8, 2010 Letter and Related Testimony [Docket No. 33] is <u>DENIED AS MOOT</u>.  Furthermore, Defendant's to Strike William Dickinson's Testimony and Expert Report [Docket No. 32] and Motion to Strike Submission [Docket No. 52] are <u>DENIED AS MOOT</u> because the Court considered none of the evidence at issue for purposes of those Motions in coming to the instant decision.

> I guess I was using two different standards is (sic) the issue in my mind. With these letters it's using more of a medical judgment of can we show for sure that this caused that. Which, no, I can't. But from the legal standard of it's more likely than not, going with the fact that these symptoms all started after that injury – I just think it's two different standards.

George Dep. at 79-80. She also testified, "The – my wording in [the May 22 Report] is more based on a medical opinion rather than a legal opinion." George Dep. at 61-62.

As explained above, it is Dr. George's expert medical judgment or opinion regarding causation that is required for Ms. Gabbard to hope to sustain a verdict in her favor. Furthermore, these statements are identical to those described in Topp and Colaw as insufficient based on their lack of reasonable medical certainty. Plaintiff counsel's attempts to couch his questions in terms of "a reasonable degree of medical probability" do not change the fact that Dr. George stopped short of attesting to anything more than the "probability" that Ms. Gabbard's injuries were caused by the March 12 incident. See, e.g. George Dep. at 40 (Q: "Can you tell me based upon a reasonable degree of medical probability what the likely cause of those symptoms were?" A: "Well, due – yes. Due to the symptoms and the time course I felt it was probably related to the same injury.") Furthermore, Dr. George admitted that her belief in the "probability" of causation was based solely on what Ms. Gabbard had told her, George Dep. at 80, and "primarily because the symptoms occurred after that injury." George Dep. at 50. Because Ms. Gabbard has failed to proffer expert medical opinion that establishes causation with any reasonable medical certainty, we find that summary judgment on her claim is warranted.

## CONCLUSION

For the reasons stated herein, Plaintiffs have failed to create a genuine issue of material fact as to an essential element of their negligence and loss of consortium claims, which prevents them from prevailing against Defendant. Therefore, Defendant's Motion for Summary Judgment is <u>GRANTED</u>. Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date: _____
        12/01/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Richard A. Cook
Yosha Cook Shartzer & Tisch
rcook@yoshalaw.com

Deanna A. Dean-Webster
DEAN-WEBSTER, WRIGHT & KITE, LLP
dean@dwwklaw.com

Bryan C. Tisch
YOSHA LAW OFFICES
btisch@yoshalaw.com